Mr. Fitchen, did I pronounce that correctly? Yes, Your Honor. Please come on up and we'll be glad to hear from you. Good morning, Your Honors. May it please the Court. The issue in this case concerns Virginia's tuition assistance grant program and that program's provision that withholds the grant to otherwise eligible students if their majors involve theological and religious vocational majors. Excluding such students like Ms. Hall is a quintessential free exercise clause violation. In holding otherwise, the District Court relied on Rodriguez DeCahos' explanation that even if a case has been undercut somewhat, it's the Supreme Court's prerogative to say that and lower courts cannot. And the case they were talking about was Locke v. Davey, which involved a similar scholarship program from the state of Washington. It reached the Supreme Court back in 2024. If that's true, then Locke is still good law and that's why we briefed it both ways and mainly acknowledging Locke's existence. It has not been explicitly overruled. But in recent years, the Supreme Court has taken almost a contrary tack to the Rodriguez tack, and that is holding courts responsible, lower courts, courts of appeals, to recognize erosions of cases, changes in jurisprudence. The two main examples we have of that is the Lemon test being overturned in Kennedy v. Bremerton School District. Justice Gorsuch, in his analysis, in his opinion, spent a lot of ink on what had happened at the Ninth Circuit when a petition for hearing on Bonk was denied. He talked about the points that the dissenters to the denial had made. Justice Gorsuch quoted the dissenters to say that Lemon had been effectively killed. They didn't use the language of it's been overruled, but effectively killed, and also the language from the dissenters that many courts had recognized its demise and left it for dead. Well, let me ask you this, but it seems like in reading Espinoza and Carson and those cases, the Supreme Court seems to distinguish those cases from Locke. Yes, Your Honor, that's true. In doing so, they really abandoned the rationale, in all three of those cases, they abandoned the rationale of the Locke majority and embraced the rationales of the Locke minority, the two dissents. It's true, however... Not the dissents, I'm talking about the majority. It seems as if they recognize Locke and they distinguish the cases from Locke. In their analysis, why this case is not Locke? Well, if this court decides that Rodriguez is still in force, then it is. Factually, it's on all fours, and we've briefed it that way. We're not running away from those similarities. What I was trying to say, though, about Trinity Lutheran and Espinoza and Carson is that the majorities in those cases actually embraced the dissenting views of the Locke case, but ironically, this seems mutually exclusive, and yet this is exactly what they did. They did distinguish it. They did not overrule it, and we can speculate the reasons. I don't want to tell you that Justice Thomas said he did not address it because no party asked them to overrule it. Right. I mean, you may well have a winner at the Supreme Court looking at the trajectory of some of these cases, but as Judge Benjamin indicated, in each one of these three later cases, the court has gone out of its way, in contrast to any of the Lemon-related cases, to say, you know, Locke is still there, and there's no language in any of those cases that, to me, implies that it's been left for dead by the side of the road. I mean, they very specifically carved it out. So, it seems like, to me, as a lower court, you know, we may agree the tea leaves show that you might have a shot at this, but I don't know that we've got the ability to give you that shot. Yes, I understand, and that's why we have, as I say, we've briefed it both ways. I think that the problem for courts, not just this court, is my second example, which is Medina, which came out of this court. And this... Some of us are familiar. Yes, with concurrence, perhaps, Your Honor, and others as well. But there, this court did not quote Rodriguez, but it quoted Hahn for the vaccine proposition. That, you know, in vertical stare decisis, it's for the Supreme Court, it's their prerogative, and this court walked through very detailed analyses of Wilder, and Wright, and Blessing, and said, we think our hands are tied, this is not for us to do. But the concurrence did say, it'd be helpful if we got some guidance from the Supreme Court. The court took the case and said that this court, and I think it was two or three other courts of appeals, should have recognized a prior repudiation. And so, you know... Doesn't quite say that we should have recognized a prior repudiation. I mean, the whole argument certainly suggested that, and you might imply that in the opinion, but he doesn't actually say that the lower courts should have done this. Well, they said that they, you're right, they talked about the prior repudiation... It's a little, I mean, it's a little, it's a little cute, right? I mean, I will confess, I have no idea what we're supposed to be doing in these kinds of contexts, because the court in cases like Mallory, I mean, it's not like they just cite to the old cases. I mean, Mallory says, it's the Supreme Court's own prerogative to overrule its cases. Right. And yet, I think certainly in both of these cases, there's a suggestion that maybe that's not always true. But it's a little hard for me to figure out how to do that. No, yes, Your Honor, we're right there with you. That's why we briefed it both ways. And to me, it's very interesting that, you know, they sort of praise the dissenters in the en banc in Kennedy, dissenters from the rehearing en banc, the language I used before, effectively killed. That's not overruled, but they, you know, It's easy to say in a dissenting opinion that Lemon's no longer good, right? Because you're dissenting, right? So like, you get to say what sort of, you don't want to there. But when you're acting on behalf of the court, that's a little bit of a different ballgame. Oh, certainly, Your Honor. My point, I'm sorry if I wasn't clear, but that was the judges who dissented from denial of the rehearing. But I'm addressing the fact that Justice Gorsuch, when the case got to the Supreme Court, spent a lot of ink on the dissenting opinions. And he picked up on their language. He said, look, courts have noted this. So we have Kennedy, which does what I described, and we have Medina, which does what I described. None of them, they don't talk about Rodriguez or Hahn, but Mallory was between those two. So they don't talk about it, they do talk about it, they don't talk about it. And again, we recognize, you know, as litigants, we're in a comfortable position to where you are as judges. It's what's the Supreme Court going to do next? And so we said, you guys, excuse me, I should say you guys, this court doesn't have the authority to overturn Locke if Rodriguez and Hahn is still good. But if the Supreme Court's attitude is more like it was in Medina, then you know, what's the court to do? But we also have more recent cases like Boyle and others that like fairly strongly tell us that vertical stare decisis is still a thing, right? I mean, it feels like a little bit of a hard story here when the court says, you know, last year in Boyle, like our decisions bind lower courts, right? And so, which is sort of the Mallory line rather than the, what you've described as the Kennedy or Medina line. Yes, this court already twice this year, I didn't check on Hahn, but twice this year, this court has cited Rodriguez for that proposition. Checking across courts of appeals, that seemed pretty typical, a couple times a year, courts of appeals are recognizing what Rodriguez says. But Mallory is the only case that the Supreme Court has done it going back about three, four, five years. And again, it was between Kennedy and Medina. It didn't cite it, but it said the same thing in Boyle, right? I mean, it says that our decisions continue to bind, even unreasoned decisions continue to bind. Yes, I mean, yes, it's, they don't have to cite Rodriguez because there are other cases. I think Mr. Fleming in his briefing also mentioned Agostini for the same proposition. This court has used Hahn, so yes, it doesn't have to be Rodriguez, I'm not saying that, but that proposition, and yes, it's a rock and a hard place. Courts are on the horns of a dilemma. And so that's exactly why we briefed it both ways. So, but going back to Trinity and Espinoza and Carson, they caverned it, for whatever reason, they relied on rationales that were from the Locke descent, as I mentioned previously, not from the Locke majority, and yet they said, but Locke still is there, and we're going to distinguish it. As your Honor said, they did literally distinguish it, they did not overrule it, that's for sure. And what is your, are you making an argument, or what is your argument, that if this court were to follow the Mallory line rather than the Kennedy-Medina line, that your client is distinguishable from Locke? Is there an argument that if we applied Locke as it stands, that your client somehow is different enough that it shouldn't matter? No, we are not distinguishing it. In the complaint, we recognize that her major is one of the theological and religious vocational majors. I mean, it's a little different, right? I mean, her major, I mean, I don't, it's sort of like hard to cut lines here, but you might think of the music ministry as like a little different than sort of the direct minister line. Is there anything to that? Well, at a common sense level, there is, I don't think there is legally. And why not? Why is that not a, I mean, so, right, I've just said it happened on Tuesday versus Thursday, and you're saying the day of the week doesn't matter, but why is it that you think her major in particular is legally the same as the theology major in Locke itself? Because the purpose of the major is to prepare students for theological vocational careers. And that's certainly not limited to what we think of as the preacher or the ordained clergy. Music ministers, choir directors, they instruct a lot. I mean, this is not anything in the record, but just as you asked it from a common base point, from a common base answer, they teach, they instruct. Music itself has incredible theological content in many church traditions. But the chief sort of discussion, you know, again, taking it for what it is, in Locke, you might say it really is limited to ministers, right? I mean, the historical discussion he has, you know, he doesn't refer to it, or maybe I don't remember him sort of referring to it as like anything that you might do that involves, you know, theology, right, but it really sort of seems to be more focused on ministers. Yeah, there's no doubt the historical analysis was because of the early national history. But for purposes of this case, in effect, with regard to the questions Judge Richardson has been asking you, you've conceded both in writing and here today that there is no difference. Correct. Correct. Yes. Factually. Okay. And so basically I guess this court has two options. If you thought we need to consider Medina, then you could rule that way. You could say no, Locke's no longer good law. But if you say no, we're not going there, you know, we're doing the Mallory thing, and it is still good law, then what we request is that you would issue an opinion expressing your own concerns about Locke to the extent that you have them and ask the court, say that we hope the Supreme Court may take this case, declare Locke no longer good law, as we would hope, or of course the opposite. And, you know, the court has already done that once in Medina. Guidance was asked for, guidance was given. So those would be the two opinions that Locke is abrogated, it's functionally abrogated, or we understand there's problems with Locke and we would encourage the Supreme Court to grant cert. Any further questions, Your Honor? All right. Thank you very much. You've got some rebuttal time. All right, Mr. Bernhardt. Good morning. May it please the Court. In Locke v. Davey, the Supreme Court addressed the exact issue that is brought before this court in Ms. Hall's lawsuit, and it held that states do not violate the free exercise clause of the First Amendment when they decline to provide funding for post-secondary students pursuing religious vocational degrees. The Supreme Court has never overruled Locke, and in this trio of recent free exercise cases, it has instead distinguished Locke from those state laws that it has struck down, primarily because of the substantial, the historic and substantial state interest in not providing state financial support for religious leaders. I take it then your view is what you've just expressed ends this case for purposes of a court of appeals. Our view is that this is a very simple case for this court, that Locke directly applies, and that this court should simply affirm because the district court applied the case that directly applies to the facts, which Ms. Hall's counsel has conceded in writing. So tell me how you understand Medina, right, because we've got this set of cases, you know, blessing that were not ever expressly overruled. They were indeed cabined and limited, just like we have here with respect to Locke versus Davey. They had been seriously undercut, but had not ever expressly been overruled. And both in the opinion and also in the oral argument, the Supreme Court was very clear, I think, in saying that the lower court, this court, should well have recognized that those cases, while they're in blessing, were no longer good law. It feels a little bit like this is the same story, right? I can imagine writing the same opinion that says, my hands are tied, and despite Kennedy and its discussion of Lemon and despite Medina and its discussion of while they're in blessing, I'm going to continue to follow Mallory on in those lines of cases. And the Supreme Court saying, like, come on, guys, y'all got to recognize the writing on the wall. Tell me why, like, that's not the best reading of Medina, and that I should continue sort of fumbling down this path where I profess to have no ability to do something. And the Supreme Court continues to say, you do not only have the ability, but you should be doing it. Judge Richardson, I think it's a different history that's presented by Locke and how the Supreme Court and lower courts have treated the Locke decision. I don't really care how the lower courts have treated the Locke decision, right? I really only care about how the Supreme Court has treated it, right? Whether my colleagues have gotten it right or wrong is a little bit neither here nor there, right? The question I've got is, has what the Supreme Court's done since then seriously undermined Locke? Yes. Right? I mean, I think that's, like, hard to argue with. The question is, has it sufficiently done so that I can, you know, say that it has been effectively overruled? The answer is no, and I think that how the Supreme Court treated Locke in Carson v. Macon is very instructive. When Maine attempted to rely on Locke, the Supreme Court explained, Locke cannot be read beyond its narrow focus on religious vocational degrees. So they're saying it can apply more broadly to separate historical traditions as it relates to state funding for primary and secondary education. But as it relates to religious vocational degrees in the post-secondary area, Locke is still good law. And they're doing that because Locke was based on a separate historical precedent. I think that's very different from that. Okay, so then why don't I take the Bivens line of cases, right, and say, in effect, any factual distinction, whether it's material or not, any factual distinction means that Locke doesn't apply. Right? That's sort of what the court has done in the Bivens context. So they've said, if you can just come up with some factual distinction, and I've got a factual distinction here, right, because Locke did not involve music ministry, and music is different. I don't exactly know why, but that doesn't matter. It's the distinction. And so in the Bivens lines of cases, the court seems to say, as long as there's a distinction, it doesn't really have to make a difference. And so why shouldn't I take that approach to Locke, just limit it immediately to its facts? I mean, run it down, you know, as much as I can. In fact, it might only be limited to cases from the West Coast, right? If you're not a West Coast state, then I'm not going to apply Locke, right? You know, sort of east of the Rockies, no Locke. I think how the Supreme Court has, what they've said is, Locke applies to religious vocational degrees. There's no question on this record, and the parties don't dispute that Miss Hall is pursuing a religious vocational degree. So there's just no grounds to distinguish. I would just say it's a vocation in music, and it happens to be, you know, in a religious setting. But, you know, I think its primary focus is music, not religion. So I think that's enough of a distinction to sort of say Locke remains good law so long as you're from Washington State and you're a minister. And I appreciate that argument, Your Honor. I would just point out that Miss Hall, her actual degree, as indicated in her complaint, is that it's music and worship with a focus on youth ministries. There is a focus on the ministries, which Mr. Davey also was pursuing a degree in theological ministry. He was seeking to become a minister. We say adults and kids are different all the time, right? And so, like, the fact that she's doing music to kids is very different than being a minister in a pulpit to adults. Right? I mean, that would be enough of a difference in the Bivens context, wouldn't it? I mean, the fact that it's a somewhat different context would suffice in Bivens, right, that involves kids, would be more than enough to distinguish the Bivens case. And, Judge Richardson, the Bivens line of cases hasn't been briefed in this case, and I'll just be candid, I'm not familiar with it, so I can't speak to that.  Turning back, I think how the Supreme Court in Espinoza v. Montana Department of Revenue, how it distinguished Montana's law from Washington's law is instructive. So, it noted when it struck down the Montana law that the Montana law prohibited state funds from going to religious schools because they're religious, and they contrasted that with the Washington law, which did allow state funds to go to students attending religious colleges. Yeah, because they, in Espinoza, they go on and say, well, you may go to a religious school, but that doesn't mean you're pursuing a, you may end up being a doctor or a lawyer. They don't use those exact examples, but this whole, what you plan to do with it versus what it is. Correct. But the court in Espinoza also noted that there's different historical traditions, and that at the founding era in the early 19th century, states apparently did not have a problem with providing state funding to primary and secondary religious schools. In contrast, the historical tradition articulated in Locke is that at that founding era, states very much did have a problem with state funds going to support the education of religious leaders. And that's, so there's just different historical traditions that the court pointed out in both Carson and Espinoza in saying these states can't rely on the same rationale that existed in Locke to prohibit funds from going to primary and secondary religious schools. Do you contend that Locke got the history right? Do you think the history is right? From what I, I am not a historian, Your Honor, but it appears to be, and I haven't seen a subsequent Supreme Court case challenge that. And I think what the Supreme Court in Espinoza noted is that states, even states that had an issue with providing financial support to the clergy, did not have a problem with providing that support for the primary and secondary education. So he was looking at. Were any of the problems with generally applicable funding as opposed to specific funding for ministers? In the historical record? You can say I have no idea. This is not totally a fair question, I acknowledge. Just to circle back, I think, to the issue of the Supreme Court's treatment of the Lemon Test in Kennedy v. Bremerton, I think what's different from how the Supreme Court has treated Locke is that prior to Kennedy v. Bremerton, in American Legion v. American Humanist Association, the Supreme Court cataloged a number of times that it had explicitly declined to apply the Lemon Test or had just outright ignored it. And also, it appeared in the record that lower courts had recognized that the Lemon Test had been abandoned. That's just not the, the Supreme Court hasn't had a similar to what it did in American Legion about Locke, and I haven't seen any lower federal courts that have essentially read the tea leaves and said that Locke has been essentially overruled. I don't think, as my colleague on the other side has noted, they're not disputing that Ms. Hall's case is on all fours with the facts with Locke, and as our briefs point out, I don't think they could do so. Both cases involve undergraduate students at private Christian colleges who chose to pursue religious vocational degrees, and then as a result were denied state funding because of that choice in degrees. And both brought similar challenges alleging that those state laws violated the free exercise clause. However, both Virginia and Washington laws allowed state funds to go to private religious colleges and to go to students who were taking courses in religious and theological studies. So again, I think this is a straightforward case for this court. We have a Supreme Court precedent that directly applies, is on all fours, and lower federal courts should simply apply this. So unless there's any further questions from the court, I would just conclude that as Locke directly applies to Ms. Hall's lawsuit, the district court correctly granted the motion dismissed for failure to state a claim, and this court should affirm. All right. Thank you very much, Mr. Bernhardt. Mr. Fitchin, want to tell us anything else? Yes, Your Honor, just a few points in rebuttal. The friend on the other side spoke briefly about Carson. The interesting thing about Carson is it serves as a good example of what I was mentioning before, where the majority in Carson actually went with the rationale of the dissenters in Locke. For example, the majority in Locke said this is only a mild imposition. Carson says there's no such thing. Any loss of First Amendment rights is not a mild imposition, and so I just wanted to, in response to what he was using Carson for, just make that a point. That's an illustration of my prior point. The question regarding is the historical record correct, I guess the non-answer is partially yes, partially no, but one real problem with the historical record, in addition to talking about things like do they support schools and yet not want to fund clergy education, there was a lot more to the history there, which I think is one of the major problems with Locke, and that is something that Justice Thomas pointed out, which is a lot of that analysis was about the Establishment Clause. And the point that there is no Establishment Clause claim or should not have been in Locke, and there is not here. And when the Establishment Clause jurisprudence is imported into a free exercise claim, it really taints the analysis. And so it's very important historically to remember that there were established churches, and so the Establishment Clause should have been irrelevant in Locke. It should be irrelevant here. In addition to the question about the music versus the clergy, this is something it sounds like my friend on the other side and I agree on. It could be distinguished that way, as we spoke before, but I don't think it should be because the overall exclusion is vocational careers in ministry and theology. And so by way of analogy, this is very much what's at issue with the ministerial exception cases. Well, are the pastors, the preachers, the rabbis different than a teacher and down the line? And we believe that doctrines like the ministerial exception, the doctrines that have been expressed in Carson and Trinity Espinoza, with the caveat, not overturned, those doctrines are designed to protect the most people. And so we really believe that this is a free exercise violation of someone with a religious, albeit musical, but religious vocational major. And so we think that is one of the major problems with Locke and with the District Court continuing to rely on Locke. So I believe that's what I have that's in rebuttal. There are many other problems with Locke, but that's trying to be responsive. All right. We thank you very much. My guess is that either you all or somebody else is going to have the chance to make this argument again, regardless of what we do. I think so, Your Honor. Good job, all counsel. We're going to come down and greet counsel, take a very brief recess, and then move on to our last case. The Honorable Court will take a brief recess.
judges: G. Steven Agee, Julius N. Richardson, DeAndrea Gist Benjamin